UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA,

                                     **MEMORANDUM & ORDER**

    v.                                   06-CR-130 (NGG)

KAROL LISZEWSKI,

               Defendant.
-----------------------------------------------------------X
GARAUFIS, United States District Judge.

       The defendant, Karol Liszewski ("Liszewski" or "Defendant"), is charged with twenty

co-defendants in a twenty-nine count indictment alleging that the defendants, purported members

of a criminal enterprise known as the Greenpoint Crew, committed the following crimes:

racketeering and racketeering conspiracy; narcotics distribution conspiracy; conspiracy to

distribute anabolic steroids; conspiracy to deal in firearms and illegal dealings in firearms; alien

in possession; conspiracy to traffic in fraudulent identification documents; transfer of fraudulent

passports, stolen social security cards, and stolen drivers licenses; possession of fraudulent

identification documents; credit card fraud conspiracy; conspiracy to traffic in stolen motor

vehicles; sales of stolen motor vehicles; receipt of motor vehicle with altered vehicle

identification number (VIN); VIN alteration; conspiracy to sell a stolen violin and possession of a

stolen violin; extortion conspiracy; robbery conspiracy; and attempted extortion.

       Liszewski is charged only in Count Fifteen of the indictment: conspiracy to traffic in

stolen motor vehicles.  The indictment alleges that Liszewski and eight co-defendants engaged in

this conspiracy between July 2005 and February 2006.  Liszewski is alleged to have taken part in

overt act (e) in Count Fifteen, engaging in a telephone conversation with co-defendant Krzystzof

Sprysak in which they "discussed purchasing and selling a stolen motorcycle."  (See Indictment ¶

61(e)).  Liszewski was arraigned before Magistrate Judge Ramon Reyes on March 8, 2006, at which time he pled not guilty to the charge of conspiring to traffic in stolen motor vehicles.

At his arraignment, Liszewski was represented by Robert Connolly, Esq. ("Connolly"), a partner in the law firm of Certilman Balin.  Connolly currently represents Liszewski.  The Government, by letter dated April 12, 2006, moved for Connolly's disqualification, alleging that he is afflicted with conflicts of interest that are so numerous and overlapping that they are not waivable and therefore mandate disqualification pursuant to Wheat v. United States, 486 U.S. 153 (1988).  (See generally Govt. 4/12/06 Ltr. Mot.)  Specifically, the Government alleges that Connolly's prior and current representation of co-defendants in this matter, unindicted co-conspirators, and cooperating witnesses, as well as his status as a potential witness at trial, require his  disqualification.  Connolly counters that any potential conflicts of interest are waivable.  (See generally Connolly 6/1/06 Ltr. Resp.).  At a hearing held on June 23, 2006, Curcio counsel was appointed for Liszewski.  A Curcio hearing was held before this court on July 11, 2006.  At the hearing, Liszewski attested that he had met with Curcio counsel, that he understood fully the potential conflicts, and that he nonetheless wished to waive those conflicts. (See Transcript of Hearing dated July 11, 2006 ("Curcio Tr."), at 27-29).   In particular, Liszewski's Curcio counsel stated the following:

> Your Honor, I had an opportunity to speak to the defendant on a number of occasions and I explained the law to him and I explained the potential conflicts of each of these many items which have been brought up by the Government.
>
> His position, he's considered it seriously, talked to his family, and he's talked to me at length, and his position is that he would prefer to keep Mr. Connolly as his attorney.  He thinks the conflicts, potential conflicts, are really moot given the nature of his defense in this case.

I have explained to him that sometimes you just don't know where things are
going in a trial, but that I would articulate his position to you, Your Honor, and
that you may well decide that there are just too many problems.

(Curcio Tr. at 3). At the conclusion of the hearing, I reserved decision on the matter. I now hold,

for the reasons set forth below, that the Government's motion to disqualify Robert Connolly as

attorney for Defendant Liszewski is DENIED at this time, without prejudice to the Government's

ability to move for reconsideration at some later date if circumstances change.

I.      **Applicable Law**

    A.      **The Right to Conflict Free Counsel**

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall

enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI.

The right to the effective assistance of counsel also includes the right to be represented by an

attorney who is free from conflicts of interest. See, e.g., Wood v. Georgia, 450 U.S. 261, 271

(1981). However, a criminal defendant "does not have the absolute right to counsel of her own

choosing." United States v. Locascio, 6 F.3d 924, 931 (2d Cir.1993); see also Wheat v. United

States, 486 U.S. 153, 159 (1988) ("[W]hile the right to select and be represented by one's

preferred attorney is comprehended by the Sixth Amendment, the essential aim of the

Amendment is to guarantee an effective advocate for each criminal defendant rather than to

ensure that a defendant will inexorably be represented by the lawyer whom he prefers."). In

United States v. Locascio, the Second Circuit explained that although a criminal defendant can

waive his Sixth Amendment rights in certain circumstances, the right to waiver is "not absolute."

Locascio, 6 F.3d at 931. The right is not absolute because "'[f]ederal courts have an independent

interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them.'" Id. (quoting Wheat, 486 U.S. at 160); see also United States v. Jones, 381 F.3d 114, 119 (2d Cir. 2004) ("The disqualification issue . . . implicates not only the accused's right to counsel, but also the interests of the judiciary in preserving the integrity of its processes, and the government's interest in a fair trial and a just verdict.").

Accordingly, the Supreme Court has held that "the District Court must recognize a presumption in favor of petitioner's counsel of choice, but that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict." Wheat, 486 U.S. at 164. Evaluating the facts and circumstances of each case to determine whether actual or potential conflicts exist is left to the district court. See id. The law of this circuit clearly defines actual and potential conflicts. "An attorney has an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and the defendant's interests diverge with respect to a material factual or legal issue or to a course of action." United States v. Perez, 325 F.3d 115, 125 (2d Cir. 2003) (citations omitted). A potential conflict of interest exists if "'the interests of the defendant may place the attorney under inconsistent duties at some time in the future.'" Id. (quoting United States v. Kliti, 156 F.3d 150, 153 n.3 (2d Cir. 1998)).

A conflict of interest, whether actual or potential, can be so serious that a rational defendant would never knowingly or intelligently desire the conflicted lawyer's representation. In such a case, the district court is obliged to disqualify the attorney, without regard to any waiver on the defendant's part. United States v. Levy, 25 F.3d 146, 153 (2d Cir. 1994); see also Jones,

381 F.3d at 120; United States v. Schwarz, 283 F.3d 76, 95 (2d Cir. 2002).

**B.      Prior representation of Co-Defendants and Cooperating Witnesses**

Prior representation of a co-defendant or Government witness can create a potentially serious conflict of interest because the attorney may be limited in impeaching the former client on cross-examination or attacking his credibility on summation without becoming what is referred to as an "unsworn witness."  In addition, when an attorney possesses first-hand knowledge of events that may be the subject of testimony at trial, it is possible that he or she could become an "unsworn witness for the accused."  United States v. Gotti, 9 F. Supp. 2d 320, 324 (S.D.N.Y. 1998).  In that situation, an attorney's relationship to the events in question may unfairly prejudice the prosecution because "the attorney can subtly impart his first-hand knowledge of the events without having to swear an oath or be subject to cross-examination." Locascio, 6 F.3d at 933.   Therefore, "[w]aiver by the defendant is ineffective in curing the impropriety in such situations, since he is not the party prejudiced."  Id. at 934.

What is not entirely clear in the context of prior representation is whether the previous representation need be on a substantially related matter to justify disqualification over the client's attempt to waive the conflict.  See, e.g., Ciak v. United States, 59 F.3d 296, 304 (2d Cir. 1995) abrogated on other grounds by Mickens v. Taylor, 535 U.S. 162 (2002) (on habeas appeal, discussing the potential for serious conflict when attorney sought to impeach "a key government witness who was his former client in a *closely related matter*") (emphasis added); United States v. Iorizzo, 786 F.2d 52, 54 (2d Cir. 1986) (reversing mail fraud convictions on ground that counsel was conflicted due to his "earlier representation of the government's key witness in a *related state proceeding*") (emphasis added); compare Tineo v. Kelly, 870 F.2d 854, 857 (2d Cir.

1989) (reversing district court's grant of habeas petition where counsel was disqualified for prior representation of prosecution witness, noting that attorney's divided loyalty between a client and a former client was "no less true simply because [attorney'] representation of the clients did not concern the same matter.").  In Tineo, the Second Circuit noted that "[t]wo clients' interests in separate matters may be just as opposed, and the potential for conflict just as serious [as when representation concerned the same matter]."  Tineo, 870 F.2d at 857; but see, e.g., United States v. Paone, 782 F.2d 386, 392 (2d Cir. 1986) (holding defendant was not denied effective assistance of counsel when midway through trial, court denied request to disqualify counsel who had represented a government witness ten years prior in obtaining bail after arrest on unrelated charges); United States v. Pizzonia, 415 F. Supp. 2d 168, 178 (E.D.N.Y. 2006) (Weinstein, J.) ("Limited representation of a government witness unrelated to representation of the defendant is not likely to present a disabling conflict.").

In the case of United States v. Perez, 325 F.3d 115 (2d Cir. 2003), the Second Circuit emphasized that "where the right to counsel of choice conflicts with the right of an attorney of undivided loyalty, the choice as to which right is to take precedence must generally be left to the defendant and not be dictated by the government."  Perez, 325 F.3d at 125 (citing United States v. Cunningham, 672 F.2d 1064, 1073 (2d Cir. 1982)).  In Perez, the Circuit Court discussed two cases in which it held attorney conflicts to be unwaivable – United States v. Fulton and United States v. Schwarz – as illustrations of the "very narrow category of cases" in which a client's knowing and intelligent waiver of conflict-free counsel would be overridden by the district court.  See Perez, 325 F.3d at 126-7 (emphasis added).  In Perez, the attorney in question represented the defendant Perez, who was also the attorney's former employee as a paralegal in his law office.

6

While representing Perez, the attorney was also representing another client, by the name of Almonte, who had been arrested just prior to Perez for strikingly similar conduct. Thus, the attorney himself was deemed a potential witness at Perez's trial. See id. at 119-20. Nonetheless, the Court of Appeals found the conflicts posed by the attorney's representation of both Perez and Almonte and by his potential status as a trial witness to be waivable conflicts, and the attorney was not disqualified. Id. at 127-29.

The Perez decision is perhaps most informative in its treatment of Schwarz and Fulton as precedent for disqualifying counsel. In Fulton, 5 F.3d 605 (2d Cir. 1993), a government witness implicated the defendant's trial counsel in a drug importation scheme related to the one for which his client was being prosecuted. This, the court found, created an actual conflict "so severe as to amount to per se ineffective assistance" because the attorney had to be concerned with his client's interest as well as his personal reputation and the fact that he himself could have been accused of a crime. In Schwarz, 283 F.3d 76 (2d Cir. 2002), the court also found an unwaivable conflict where the attorney had an overwhelming financial conflict of interest. The lawyer represented a police officer who was one of the defendants in the Abner Louima case, and his firm concurrently received a two-year, $10 million retainer to represent the Policeman's Benevolent Association ("PBA") in a civil suit filed by Louima.[1] The court concluded that the conflict created by the enormous financial incentive in serving the PBA's interest gave rise to "the distinct possibility . . . that, at each point the conflict was felt, [counsel] would sacrifice

---

[1] The conflict arose because Schwarz, who was accused of being the second officer to have assaulted Louima, had an interest in pursuing a defense strategy in which he urged that there was no second officer, or that such an officer was not him. This conflicted with the defense the PBA, which was alleged to have covered up the incident, would put forward in its civil suit.

Schwarz's interests for those of the PBA." Schwarz, 283 F.3d at 96.

The Second Circuit's treatment of Fulton and Schwarz in the Perez decision suggests that these two cases represent extremes where disqualification notwithstanding waiver is appropriate, but that in lesser circumstances, if fully informed, a client's waiver should be credited.

### C.      Multiple Conflicts

If presented with a case where an attorney suffers from multiple conflicts, the district court must consider the conflicts in totality, and not in isolation. See Levy, 25 F.3d at 157; United States v. Gotti, 9 F. Supp. 2d 320, 323 (S.D.N.Y. 1998); United States v. Rahman, 861 F. Supp. 266, 274 (S.D.N.Y. 1994). Indeed, numerous potential and otherwise waivable conflicts, taken in conjunction, can be a valid basis for attorney disqualification, even if a number of conflicts on their own would not warrant disqualification. See, e.g. United States v. Yannotti, 358 F. Supp. 2d 289 (S.D.N.Y. 2004).

Where multiple potential conflicts exist, deciding whether the attorney should be disqualified over his client's objection is a difficult one. Two decisions, one from this district and one from the Southern District of New York, considering the disqualification of the same attorney, illustrate the difficulty in applying the law in this area consistently to unique factual circumstances. A brief discussion of these two cases will inform this analysis. In United States v. Yannotti, Judge Scheindlin considered and granted the Government's motion to disqualify attorney Joseph Corozzo ("Attorney Corozzo") from representing a member of the Gambino Organized Crime Family ("OCF") in a RICO trial of Gambino members and associates. Judge Weinstein, however, with full awareness of Judge Scheindlin's prior decision, recently denied the Government's motion to disqualify Attorney Corozzo from representing another member of the

Gambino OCF in the RICO trial of <u>United States v. Pizzonia</u>, 415 F. Supp. 2d 168 (E.D.N.Y. 2006).

In <u>Yannotti</u>, the Government asserted that Attorney Corozzo suffered from four types of potential and/or actual conflicts of interest, arguing that in their totality the numerous conflicts required disqualification. 358 F. Supp. 2d at 290. First, the Government contended that Attorney Corozzo was conflicted due to his familial loyalty to the Gambino OCF in that Attorney Corozzo's father, "JoJo" Corozzo, was the alleged consigliere of the Gambino Family, and his uncle, "Nicky" Corozzo, was an alleged longtime capo. Importantly, Nicky Corozzo's crew included Attorney Corozzo's client, Yannotti; indeed, Yannotti allegedly reported directly to Nicky during the time period of the murders alleged in the indictment. The Government proffered that it would "repeatedly refer" to Attorney Corozzo's uncle during trial. This, the court explained, would prejudice Yannotti "because the association between Corozzo and a high-ranking figure in the Gambino Family may simultaneously discredit Corozzo and reinforce in the jurors' minds the notion that Yannotti himself is a bad actor." <u>Id.</u> at 292. The court held that an actual conflict existed inasmuch as Yannotti, who was facing life imprisonment if convicted, had some incentive to cooperate with the government, but that Attorney Corozzo would likely not advise his client to cooperate "since Yannotti may be able to provide information and testimony that the government could use against Nicky and, perhaps, JoJo Corozzo." <u>Id.</u> Moreover, the court determined that Attorney Corozzo may be more likely to counsel Yannotti to not take the stand in his own defense because cross examination of Yannotti could elicit testimony damaging to Attorney Corozzo's uncle and father. The court found that Attorney Corozzo's and Yannotti's interests "may diverge with respect to trial strategy; at the very least, an appearance of

impropriety exists insofar as Corozzo has a personal interest in what course of action his client will follow." Id. The court noted, however, that this conflict standing alone might not warrant disqualification, but that it would have to be considered in conjunction with the other conflicts raised. Id.

Next, the Government maintained that there would be testimony at trial involving two events in which Attorney Corozzo took part: (1) a gathering of Gambino members at Foxwoods Casino; and (2) that a cooperating witness ("CW") allegedly shot a man at Attorney Corozzo's request. Id. at 293. Thus, the issue of whether Attorney Corozzo might serve as an "unsworn witness" arose. With respect to the Foxwoods gathering, Judge Scheindlin determined there need not be an unsworn witness problem as there was no need to address the fact that Attorney Corozzo was present at the gathering. With regard to Attorney Corozzo's alleged involvement in a shooting incident, however, the court opined that Yannotti's defense would be prejudiced because Attorney Corozzo could not cross-examine the CW regarding the incident or question the credibility of his testimony during summation without becoming an unsworn witness. Id. at 294. The court described Attorney Corozzo's position of having to choose between becoming an unsworn witness and refraining from vigorously defending his client as a "potentially serious conflict of interest." Id. at 294-5. Again, the court noted that on its own this conflict "may not be so prejudicial as to require that Corozzo be disqualified," but that it must be considered in conjunction with the other conflicts raised. Id. at 295.

Third, the Government argued that a conflict existed as a result of Attorney Corozzo's prior representation of two cooperating witnesses, and of co-defendant John Gotti. The court stated that "[b]ecause an attorney's duties of loyalty and confidentiality to his clients remain in

force after the termination of the attorney's retainer, the attorney cannot vigorously cross-examine the former client or question the client's credibility during summation without violating his obligations." Id. at 295 (internal citations omitted). The former client must waive these obligations, or the prior representation "creates the potential for a serious conflict of interest." Id. (citing Jones, 381 F.3d at 119 ("An actual conflict of interest exists . . . when the attorney's representation of the defendant is impaired by loyalty owed to a prior client.")). In Yannotti, the court found that because one of Attorney Corozzo's former clients, who refused to waive the conflict, was expected to testify against Yannotti at trial, this raised a potential serious conflict. Id. [2]

Finally, the Government alleged that Attorney Corozzo acted as "house counsel" for the Gambino OCF, and that his loyalties were therefore divided between the family and his client. Id. The court noted that without a hearing it could not conclusively credit the house-counsel allegation, but nonetheless determined that the multiple grounds for disqualification obviated the need to determine conclusively if Attorney Corozzo was house counsel as an independent ground of disqualification. Id. at 297. Ultimately, Judge Scheindlin concluded that "taken together," three of the conflicts alleged – Corozzo's relationship with his uncle; Corozzo's alleged involvement in the shooting incident which would be the subject of trial testimony; and Corozzo's representation of a "material witness against his current client" – were "sufficiently severe that no rational defendant would knowingly or intelligently desire Corozzo's

---

[2] With respect to Attorney Corozzo's other former client-turned-cooperator and co-defendant Gotti, the court found that there was not conclusive evidence without a hearing to demonstrate a conflict, but that proffered testimony certainly suggested the potential for a serious conflict. See id. at 296.

representation under these circumstances." Id. Thus, the court disqualified Attorney Corozzo.

In Pizzonia, in contrast, Judge Weinstein found Attorney Corozzo's conflicts waivable and denied the Government's motion to disqualify him. Although Attorney Corozzo had previously represented one government witness and the co-defendant of another cooperator, Judge Weinstein found these conflicts waivable. Specifically, with respect to one of the cooperators, the court determined that Attorney Corozzo merely did investigative work out of friendship for him, but never represented him in a legal capacity, and thus would not breach any ethical standards by cross-examining him or impeaching his credibility. Pizzonia, 415 F. Supp. 2d at 179-80. As to a second cooperating witness, who was a co-defendant with a former client, the court found that Attorney Corozzo never undertook a joint defense with this witness.[3] Thus, Judge Weinstein found no unwaivable conflict as a result of prior representations of cooperators. Id. The Government also urged that a conflict existed with respect to Attorney Corozzo's current and prior representation of an unindicted coconspirator. The court found that Attorney Corozzo's representation of these man was on "matters unrelated to defendant's prosecution" and that, although the defendant did "possibly reduce the number of defense strategies [available to him] by continuing to retain defense counsel," he was apprised of this fact and thus could validly waive any conflict that existed. Id. at 181-2.

In the Pizzonia case, the Government also alleged that Attorney Corozzo had a role as a co-conspirator in the racketeering enterprise, i.e. the Gambino OCF. The Government proffered that it had taped conversations in which Attorney Corozzo's father told Gambino members that

---

[3] Under the "common interest rule," an attorney's duty of loyalty extends to a co-defendant of a former client where counsel for both defendants undertook a joint defense. See United States v. Schwimmer, 892 F. 2d 237, 243-44 (2d Cir. 1989).

he wanted his son inducted into the crime family, and that Attorney Corozzo's representation of numerous persons alleged to be participants in organized crime demonstrated his status as a co-conspirator. Judge Weinstein rejected this argument, stating that this did not prove that Attorney Corozzo was a co-conspirator and that such testimony would not be relevant at trial, and therefore no conflict existed. Id. at 182-3.

With respect to Attorney Corozzo's alleged familial loyalties to the Gambino OCF, Judge Weinstein found the conflicts waivable. Id. at 184-5. He distinguished Yannotti on this point on the ground that it was crucial to the Yannotti holding that defendant Yannotti was alleged to have reported directly to Attorney Corozzo's uncle as his capo during the time period relevant to the indictment. This apparently was not true in the Pizzonia case. Moreover, the court emphasized that the Yannotti decision found Attorney Corozzo's conflicts unwaivable *in toto*, i.e. in combination with his alleged involvement in a shooting that would be the subject of trial testimony and the fact that he previously represented a cooperating witness who would provide material testimony against his client. Judge Weinstein found that the multiple conflicts alleged in Pizzonia, considered in totality, did not mandate disqualification of Attorney Corozzo.

The decisions in Yannotti and Pizzonia reflect the wide latitude district judges possess in determining whether counsel should or must be disqualified due to conflicts of interest. The differing outcomes are representative of the vast gray area that exists in this area of law between serious conflicts which lead to per se ineffective assistance of counsel and lesser potential conflicts which may, at some point, compromise the integrity of the trial process.[4]

---

[4] Indeed, issued contemporaneous with this Memorandum and Order is my ruling on a disqualification motion in a separate criminal matter, in which I found that the government has overcome the presumption in favor of defendant's preferred counsel. See United States v. Galestro, 06-CR-285, slip. op. (E.D.N.Y. Aug. 16, 2006) (Garaufis, J.).

**D.    The Supreme Court's Recent Decision in <u>United States v. Gonzalez-Lopez</u>**

The criminal defendant's right to counsel of his choice has taken on renewed significance in the last few weeks.  Just one month ago, the Supreme Court held that where a defendant's Sixth Amendment right to counsel of his choice is violated because the disqualification of his chosen counsel was erroneous, no additional showing of prejudice is required to make the violation complete, and he is entitled to reversal of his conviction, as error qualified as a "structural error" not subject to review for harmlessness.  <u>United States v. Gonzalez-Lopez</u>, 126 S. Ct.  2557 (2006).  In other words, if counsel is wrongly disqualified, the defendant is granted *automatic* reversal on appeal, notwithstanding the fact that the ensuing trial was by all accounts fair.

**II.    Connolly's Alleged Conflicts**

In the instant case, the Government maintains that Connolly suffers from three different types of conflicts: (1) prior representation of co-defendants; (2) current representation of a cooperating witness ("CW"); and (3) that he himself may be a potential witness at trial.

**A.    Prior and Current Representation of Co-Defendants and a CW**

**1.    *Co-defendant Tomek Wojtasczyk*:**

Wojitasczyk was represented in this case by Connolly from arraignment on March 8, 2006, until June 5, 2006.  Wojitasczyk, like Liszewski, is charged only in Count 15 of the indictment.  At the <u>Curcio</u> hearing, Connolly explained that he represented Wojtasczyk approximately seven years ago in a Queens case involving stolen car parts.  (Curcio Tr. at 11-12).

**2.    *Co-defendant Andrzej Madej***

Madej was represented in this case by Connolly from arraignment, March 8, 2006, until May 10, 2006. He is also charged only in Count 15. Connolly attests that he also represented Madej approximately seven or eight years ago in a Driving While Intoxicated (DWI) case in Brooklyn that is unrelated to the present case. (Curcio Tr. at 12).

### 3. *Co-defendant Krzysztof Sprysak*

Sprysak was also represented by Connolly at arraignment, but retained new counsel only six days later. (See Docket Entry No. 58). Sprysak is charged in Count 15 of the indictment as well as several other counts; he is alleged to be a leader of the Greenpoint Crew. The Government alleges that Sprysak has referred "several" clients in the past to Connolly, and thus that Connolly has a financial incentive not to harm Sprysak or shift blame to him in defense of Liszewski. (See Curcio Tr. at 5). Connolly responds that Sprysak referred one client to him, who retained Connolly's firm. (Id. at 16). Further, Sprysak is currently represented by Connolly's firm in an unrelated personal injury suit, involving a car accident, that he is pursuing under the last name "Rumor." At the Curcio hearing, Connolly explained that his firm took on Sprysak's current personal injury case subject to investigation, and that the firm has not filed suit in connection with it. (Id. at 11). Connolly said he has spoken with Sprysak's new counsel and that it appeared likely that Sprysak's new attorney would take over the personal injury lawsuit. (Id. at 11, 21-2). Connolly also stated that he represented Sprysak "probably over ten years ago" on an unrelated matter that he believes "had to with stolen parts, car parts." (Id.).

### 4. *Co-defendant Rafal Grzybowski*

Grzybowski was represented by Connolly in a Southern District of New York case concerning document fraud, wherein Grzybowski fled from the jurisdiction prior to sentencing and is believed to now be in Poland. Grzybowski is charged in Count 15 of this indictment as "Rafal LNU." Connolly attested at the Curcio hearing that he no longer represents Grzybowski. (Curcio Tr. at 10).

### 5. *Co-defendant and Cooperating Witness Lukasz Zalewski*

Zalewski is currently represented by Connolly in a DWI case, and was previously represented by Connolly in a 1996 stolen car case. He is charged in numerous counts in the indictment, but not in Count 15. Zalewski has entered into a cooperation agreement with the Government, and the Government proffered at the Curcio hearing that Zalewski "will testify about the very car, stolen car conspiracy that [defendant Liszewski] is charged with." (Curcio Tr. at 5). Connolly maintains that his current representation of Zalewski is unrelated. He also stated that he has contacted Zalewski's current attorney in this matter to see if he will take over Zalewski's pending DWI case, to which Connolly maintained at the hearing Zalewski intends to plead guilty. (Id. at 24-5).

### 6. *Unindicted Co-Conspirator Dominic Tudron*

Tudron is not a defendant in this case, but has been identified by the New Jersey State Attorney General's Office as a co-conspirator of Sprysak, Madej and co-defendant Pawel Drozdal in a New Jersey stolen car ring. (See Govt. 6/9/06 Ltr., at 6 n.5; Curcio Tr. at 4). Connolly attests that he knows Tudron by the name of "Tudruj" and that he currently represents him in a New York case that is "completely unrelated to this case." (Curcio Tr. at 14).

**B.      Connolly's Status as a Potential Witness at Trial**

The Government also maintains that Connolly is a potential witness in this case because (1) his representation of five defendants may itself be offered as evidence of the charged conspiracy; and (2) the government currently intends to offer at least one intercepted conversation of which Connolly has firsthand knowledge.  With respect to the former, the Government argues that the very fact that several of the alleged co-conspirators in this case have chosen to retain Connolly's legal services can itself be offered at trial as evidence to prove the existence of the conspiracy.  Thus, the Government argues, Connolly may either become a sworn witness called to testify at trial or an "unsworn witness," either scenario of which mandates his disqualification.  (See Gov't 4/12/06 Ltr. Mot., at 11-12).  Second, the Government proffers that it will introduce at trial an intercepted call made on December 15, 2003 between co-defendants Sprysak and Madej that, in substance, mentioned Madej having consulted Connolly about potential law enforcement monitoring of his alleged criminal activity.  (See id. at 12).  Connolly responds that the fact that he has represented co-defendants in unrelated matters over the last ten years does not provide evidence of the charged conspiracy as there has been no allegation that Connolly can be considered "house counsel" to the Greenpoint Crew.  (Connolly 6/1/06 Ltr. Resp., at 4-5).  Further, Connolly argues that he has no first-hand knowledge of the intercepted phone call between Sprysak and Madej, and, moreover, that to the extent Madej called him seeking legal advice after learning of a potential law enforcement investigation concerning his conduct, this does not provide evidence of consciousness of guilt, and therefore presents no conflict of interest.  (Id. at 5-6).

### III.    Discussion

I note at the outset that the question before this court is not an easy one to answer.  I have discussed at length the applicable law, and specifically the application of the law in cases such as Yanotti and Pizzonia, primarily to demonstrate that disqualification decisions, particularly when the facts present overlapping levels of potential conflicts, are difficult to make and yield inconsistent results.  Moreover, in light of the Supreme Court's recent decision in   United States v. Gonzalez-Lopez, I am acutely aware of my obligation to permit Liszewski to proceed with counsel of his choice if at all possible.  See generally Gonzalez-Lopez, 126 S. Ct.  2557 (2006).  Indeed, by intensifying the consequences of an erroneous decision in Gonzalez-Lopez, the Supreme Court has heightened what was already an extraordinary burden placed on the trial court to assess whether a conflicted attorney must be removed.  I must err on the side of non-disqualification, both because Liszewski has a constitutional right to counsel of his choice, and because to do otherwise would be to risk automatic reversal of any conviction that might ensue.  In tension with these considerations is my duty to ensure that Liszewski is not represented by counsel that is overly-conflicted such that his representation would be ineffective.

I begin with what is perhaps the most troubling potential conflict in this matter, that which arises from Connolly's current  representation of cooperating witness Lukasz Zalewski in an unrelated DWI case and previous representation of Zalewski in a 1996 stolen car case.  This raises a potentially serious conflict in that Connolly may not be able to vigorously cross-examine Zalewski and/or attack his credibility because he has continuing duties of loyalty to Zalewski.  Of course, this is tempered by the fact that the DWI case is in no way relevant to the current indictment, and the 1996 stolen car case is attenuated, if related at all.

Prior representation of a cooperating witness does not necessarily give rise to a conflict warranting disqualification. See e.g., United States v. Paone, 782 F.2d 386, 393 (2d Cir. 1986); United States v. Cunningham, 672 F.2d 1064, 1073-4 (2d Cir. 1982). In support of disqualification in the instant matter, the Government has cited, and this court is fully aware of, the numerous cases where district courts have held, and the Second Circuit has affirmed, the decision to disqualify counsel based on the attorney's previous representation of a cooperating witness and the continuing duty of loyalty thus owed to the former client. See e.g., United States v. Malpiedi, 62 F.3d 465, 469 (2d Cir. 1995); Tineo, 870 F. 2d at 857; Iorizzo, 786 F.2d at 54. I am equally aware, however, of the difficulty in discerning at an early stage the seriousness of potential conflicts, see Wheat, 486 U.S. at 162-3 ("The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials."), and that disqualification of counsel is a harsh remedy that should not be casually invoked. See United States v. DiPietro, No. 02 CR 1237, 2004 WL 613073, *5 (S.D.N.Y. Mar. 29, 2004); United States v. Gotti, 9 F. Supp. 2d 320, 323 (S.D.N.Y. 1998). Moreover, "[t]he majority of cases that have found a conflict of interest from prior representation of a witness involve substantially related representations, where the danger of divided loyalties or revealing client confidences is at a maximum." Pizzonia, 415 F. Supp. 2d at 178 (citing cases).

On the face of the record currently before me, after consideration of the applicable law and precedent in the disqualification of counsel context, I am simply not convinced that the conflict posed by Connolly's prior and current representation of Zalewski is so severe that I can conclude with confidence that Liszewski could not rationally, knowingly or intelligently desire Connolly's representation. At this time, there is no indication that Zalewski would be a key

witness against Liszewski such that Connolly's conflict might significantly compromise Liszewski's defense.  In addition, there has been no showing that Connolly possesses privileged information that would implicate the attorney-client privilege were Zalewski to take the stand.  In short, any potential conflict at this point is waivable due to the fact that Connolly's representations of Zalewski are on matters substantially <u>unrelated</u> to the current prosecution.  Thus, Connolly's representation of cooperating witness Zalewski will not serve as an independent basis for disqualification of Connolly.

Further, it is plain to me that each of the additional conflicts that the Government asserts Connolly suffers from arising from his prior representation of co-defendants in this case can be validly waived by Liszewski.  These will be discussed briefly below, as well as the critical question of whether, considering all of the potential conflicts in totality, Connolly is too hopelessly conflicted to continue representation of Liszewski in this case.  <u>See</u> <u>Yannotti</u>, 358 F. Supp. 2d at 297.  I believe, at this time, that Connolly is not so conflicted.

Connolly has previously represented in this matter several co-defendants, which raises a potential conflict of interest notwithstanding the fact that Connolly's representation of the co-defendants was primarily limited to arraignment.  The Government posits several scenarios in which Connolly's prior representation could present a real conflict at trial, as follows.  First, around the time of arraignment, Connolly might have advised Sprysak and Madej to cooperate with the Government, but did not do so because of his conflicted interests.  Additionally, the Government urges, Connolly could use information learned through his prior representation of co-defendants on Liszewski's behalf, by, for example, offering evidence that Sprysak, Madej and Woktascyz trafficked in stolen cars in order to shift blame to them.  Similarly, Connolly could

offer evidence respecting his former client Grzybowski, who fled to Poland prior to sentencing, to contrast Liszewski's decision not to flee as evidence of the absence of consciousness of guilt on Liszewski's part. Finally, the Government posits that Connolly could use the fact that Spyrsak is pursuing with his law firm a personal injury claim under an alias as evidence that Sprysak is dishonest and deceived Liszewski in the charged conspiracy.

Suffice it to say, the Government has illustrated a number of potential conflicts arising from Connolly's previous representation of co-defendants in this matter in that the interests of Liszewski "may place [Connolly] under inconsistent duties at some time in the future." United States v. Kliti, 156 F.3d 150, 153 n.3 (2d Cir. 1998). However, it is not evident that Connolly possesses information as a result of his prior representations that is material to the instant case. Thus, at a minimum, I see no *actual* conflict because there is no reason to believe that Connolly's and Liszewski's interests diverge "with respect to a material factual or legal issue or to a course of action." Perez, 325 F.3d at 125 (citations omitted).

In United States v. Levy, 25 F.3d 146 (2d Cir. 1994), the Second Circuit reversed a defendant's conviction because one of a number of conflicts was the attorney's prior representation of a co-defendant. The Circuit Court reasoned that the attorney's continuing obligations to his former client "necessarily meant" that his interests diverged from his current client "especially since [the defendant's] most likely defense was to shift blame to [the former client]." 25 F.3d at 156. In that case, however, the circuit court found that the attorney possessed "privileged information from his relationship with [his former client] that was *directly* relevant to [his current client's] defense." Id. (emphasis added). Here, there has been no showing that Connolly possesses information that is in any way directly relevant to his current

client's case, and thus the need for disqualification on this ground is much weaker than in <u>Levy</u>.

Moreover, there has been no suggestion that Liszewski's defense will be one of shifting blame to

Connolly's former clients. Indeed, this is belied by the assertion of Liszewski's <u>Curcio</u> counsel

that Liszewski believes that the potential conflicts raised are "moot given the nature of his

defense in this case." (Curcio Tr. at 3). Moreover, Liszewski is charged only with *conspiracy* to

traffic in stolen motor vehicles. Given that he is charged with conspiracy – and not a substantive

crime – a "shifting blame" defense arguably would be unpersuasive to the extent that finger-

pointing in a conspiracy will not necessarily extinguish one's criminal liability.

Potential conflicts exist as well in connection with Connolly's current and prior

representation of various co-defendants on matters the court finds not substantially related to the

instant prosecution. As discussed above, anywhere from seven to ten years ago, Connolly

represented co-defendant Wojtasczyk in a stolen car parts case; co-defendant Madej in a DWI

case; co-defendant Sprysak in a stolen car parts case; and co-defendant/cooperator Zalewski in a

stolen car case. Connolly's firm also currently represents Sprysak in a personal injury case and

Zalewski in a DWI case. Obviously, this represents several layers of potential conflicts.

However, the critical factor is that Connolly's representations are on matters that are not

substantially related to the pending criminal case against his client Liszewski. <u>See</u>, <u>e.g.</u>, <u>Paone</u>,

782 F.2d at 392; <u>Pizzonia</u>, 415 F. Supp. 2d at 178. Thus, at this time, it does not appear that

Connolly's representation of Liszewski would be so conflicted as to require his disqualification.

Further, I find the Government's argument that Connolly has a financial incentive to not

harm Sprysak because Sprysak has referred clients to him unconvincing. While there does seem

to be evidence that referrals may have been made, the Government's reliance on <u>United States v.</u>

Schwarz, 283 F.3d 76 (2d Cir. 2000), to suggest that Connolly's financial interest here presents an unwaivable conflict, or even a serious potential conflict, is without merit. Schwarz is easily distinguishable as it involved a $10 million retainer. See Perez, 325 F.3d at 124 (noting that "Schwarz presented highly 'unusual facts' that are not easily analogized to other cases – and certainly not to this one – for . . . Schwarz involved a defense attorney's self-interest that actually conflicted with his client's interests so severely as to permeate evert aspect of the representation") (internal citation omitted).

Connolly's status as a potential witness raises possible conflicts, but conflicts that this court finds to be minimally serious and waivable. The Government's proffer that it will be permitted  to introduce the fact that Connolly has represented several co-defendants as evidence of the existence of the conspiracy is not supported by case law in this circuit and district. Evidence of this nature is admissible to prove the existence of the conspiracy only where there are other "suspicious circumstances" present. See, e.g., United States v. Barnes, 604 F.2d 121, 147 (2d Cir. 1979) (finding that tax returns of several co-defendants prepared by a single law firm were relevant "to establish the existence of the conspiracy and its membership" because the returns showed increased miscellaneous income that comported with government's theory of promotion of members of the conspiracy); United States v. Castellano, 610 F. Supp. 1151, 1160 (S.D.N.Y. 1985) ("Barnes implicitly stands for the proposition that, when other suspicious circumstances are present, the decision of a number of persons to retain the same lawyer may be probative of an association among them"). Typically, the suspicious circumstance present is the fact that the attorney has received payments for his services to co-defendants from a "benefactor," suggesting that the attorney served as so-called "house counsel" to the criminal

enterprise.  See United States v. Locascio, 6 F.3d 924, 933 (2d Cir. 1993) (affirming disqualification of counsel, in part, on grounds that he served as "house counsel" to Gambino crime family based on proof of benefactor payments and recorded statements); United States v. Simmons, 923 F.2d 934, 949 (2d Cir.) (holding that government can use evidence of benefactor payments to prove existence of enterprise), cert. denied, 500 U.S. 919 (1991); United States v. Castellano, 610 F.Supp. 1151 (S.D.N.Y. 1985) (disqualifying attorney because attorney's acceptance of benefactor payments could be used to prove existence of enterprise).  In the absence of other suspicious circumstances, Connolly's unrelated representation of co-defendants is not probative evidence of the existence of the charged conspiracy.  There has been no allegation that Connolly is "house counsel" to the Greenpoint Crew, and thus, at this point it seems likely that evidence of his representation of several co-defendants will not be admissible at trial.  Therefore, there is currently only a minimal possibility that Connolly would serve as an unsworn or sworn witness on this point.  At this time, I find that this is not grounds for disqualification.

The second aspect to the unsworn witness conflict concerns Connolly's alleged first hand knowledge of a phone conversation between two co-defendants regarding Connolly's legal services.  As Connolly was not a party to that conversation, I fail to see how he has first-hand knowledge of it.  Therefore, at this time, I find that this does not raise a potentially serious conflict of interest.

In sum, I find each of the potential conflicts raised to be waivable by Liszewski, and that all of the conflicts considered in totality do not mandate Connolly's disqualification at this time.  I emphasize, however, that my decision not to disqualify Connolly at this juncture is subject to

reconsideration if circumstances change. For example, should other former clients of Connolly's become cooperating witnesses, that factor might very well "tip the scales" to require disqualification. At this time, nevertheless, I find Connolly's conflicts waivable individually and *in toto*. <u>Curcio</u> counsel has been appointed and has counseled Liszewski. A <u>Curcio</u> hearing has been held and at that hearing Liszewski knowingly and intelligently waived the potential conflicts raised by the Government.[5] Therefore, at this time, Connolly will be permitted to continue representation of Liszewski.

---

[5] At the <u>Curcio</u> hearing, Liszewski stated on the record that he was informed of and understood the potential conflicts afflicting Connolly, but that he nonetheless wanted Connolly to serve as his attorney. The Government explicitly stated its position, to which Connolly noted his objections, that at trial Connolly would be (1) unable to "pursue a strategy of burden shifting to former and current clients;" (2) unable to cross examine a current client, namely Zalewski, if he were to testify against Liszewski; (3) unable to pursue defensive strategies at sentencing, namely to argue effectively to minimize Liszewski's role in the charged conspiracy in contrast to the roles of former clients of Connolly's; and (4) that Liszewski might be prejudiced by a possible negative inference based on the fact that Connolly's name may come up in evidence at trial. (<u>See</u> Curcio Tr. at 20-21, 23-28). Liszewski validly waived each of these potential conflicts. (<u>Id.</u>).

**IV.     Conclusion**

For the reasons set forth above, the Government's motion to disqualify Robert Connolly from representing Defendant Karol Liszewski in this matter is DENIED.


SO ORDERED.

Date:    August 16, 2006                           _____/s/_____
       Brooklyn, New York                  Nicholas G. Garaufis
                                           United States District Judge