**RICHARD PALMA**
**ATTORNEY AT LAW**
**381 PARK AVENUE SOUTH-SUITE 701**
**NEW YORK, NEW YORK 10016**

**MEMBER OF THE BAR IN NEW YORK – NEVADA – FLORIDA**

**TEL. (212) 686-8111**
**FAX (212) 686-8690**
**E-MAIL: rpalma@verizon.net**

August 1, 2007

Honorable Joanna Seybert, U.S.D.J.
United States District Courthouse
for the Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722-4438

***Re: U.S. v. Shalva Kartvelishvili, 06 Cr. 130 (JS)(S-1)***

Dear Judge Seybert:

This sentencing memorandum is submitted for Your Honor's consideration on behalf of Mr. Shalva Karvelishvili in anticipation of his sentencing hearing which is scheduled for Friday, August 10, 2007 at 11 A.M. Mr. Kartvelishvili was found guilty after a jury trial to Count One of the above referenced indictment, Conspiracy to Interfere with Commerce by Robbery, in violation of **Title 18, United States Code § 1951(a)**. The jury rendered its verdict on March 8, 2007 exactly one-year to the day of his arrest for this indictment, March 8, 2006. Since the date of his arrest, Mr. Kartvelishvili has been in custody on this indictment for more than 17 months.

Mr. Kartvelishvili objects to the sentencing range in the Presentence Investigation Report ("PSR") calculated under United States Sentencing Guidelines ("USSG") of 63 to 78 months incarceration.[1] It is Mr. Kartveilishvili's contention that a reasonable sentence as to him should not exceed the sentence received by his co-defendant, Merab Merabishvili, of 18 months incarceration.

[1] See PSR ¶¶¶ 84, 87 & 116. The PSR calculates the sentence at USSG level 26, 63 to 78 months incarceration, in Criminal History Category I.

Considering that the USSG are no longer mandatory,[2] and considering that Mr. Kartvelishvili's criminal conduct in this conspiracy, as shown in this trial, is significantly less extensive than that of Merabishvili's, it is reasonable that a sentence for Mr. Kartvelishvili should not exceed that of Merabishvili's, despite his conviction after trial.[3] As per **U.S. v. Booker**, sentencing in federal courts is governed by the sentencing factors of **Title 18, United States Code § 3553(a)** and is no longer limited by the strictures of USSG.[4]

, This sentencing memorandum will advise Your Honor of matters that Mr. Kartvelishili will raise at the time of his sentencing hearing as per **Rule 32 Fed. R. Crim. P.** Specifically, Mr. Kartvelishvili respectfully recommends that the Court accept the findings of fact and conclusions of law in the PSR, except for the following:

- Mr. Kartvelishvili does not warrant a **5-level** increase for possession of a firearm as per PSR ¶ 75;
- he does not warrant a **2-level** increase for physical restraint of a victim as per PSR ¶ 76;
- and he does not warrant a **2-level** increase for the amount of money which was to be stolen as the object of the robbery as per PSR ¶ 77.

Accordingly, Mr. Kartveilishvili's USSG calculation should read as follows:

- Base Offense level of **20** as per USSG 2B3.1(a), PSR ¶ 74;
- Specific Offense Characteristic of **minus 3** as per USSG 2X1.1 (b)(2), PSR ¶ 78;

---

[2] **125 S.Ct. 738 (2005)**.(in determining a reasonable sentence a court must take into account the factors stated in **Title 18 § 3553(a)** and in doing so it is no longer mandated, but merely advisory, to follow the regimen of United States Sentencing Guidelines).

[3] E.g., see, Trial Transcript pp 378-382 passim. Furthermore, the Court should note that Merabishvili was convicted of other crimes in this indictment apart from this robbery conspiracy.

[4] Booker passim.

- no enhancements as per ¶¶ 74, 76-77;
- Accordingly, Total Offense level **17**, Criminal History Category I, 24-30 months incarceration.

Finally, at the time of sentencing, Mr. Kartvelishvili will argue for a non-guidelines sentence taking into account the sentencing factors of **Title 18, United States Code § 3553(a)**. Attached to this memorandum are character letters written on behalf Mr. Kartvelishvili by his mother and other acquaintances for Your Honor's consideration.

## FACTS OF CASE

Mr. Kartvelishvili was arrested, along with 15 other individuals, as part of a racketeering investigation conducted jointly by the FBI and the NYPD.[5] These individuals, who operated in the Eastern District of New York, primarily out of the Greenpoint section in Brooklyn, were labeled by law enforcement as the *Greenpoint Crew*. They were mostly immigrants from Poland and the Ukraine who were involved in various crimes which included narcotics trafficking, weapons trafficking, documents fraud, trafficking in stolen property, robbery, and extortion.[6] As reflected in the indictment, and further established at trial, Mr. Kartvelishvili was never a member of this crew nor was he charged with the Racketeering Count in the indictment. Mr. Kartvelishvili's role in this investigation was limited to his participation in the robbery conspiracy of a wine store located at 297 Butler Street in Brooklyn with two members of this crew, Ostap Kapelloujnyi, the leader, and Merab Merabishvili, one of its members.[7]

As established at the trial, this robbery conspiracy was merely a set-up orchestrated by the FBI and executed through the informant,

---

[5] PSR ¶ 2.
[6] PSR ¶¶ 2-3.
[7] PSR ¶ 4.

Volodymyr Olinyk, who in this investigation either wore a body wire at meetings with Kapeloujnyi, Merabishvili, and Kartvelishvili or consensually recorded their telephone conversations.[8] Olinyk, an illegal alien from the Ukraine, decided to cooperate with the FBI immediately after the date of his second arrest in the United States, January 27, 2005, for the sale of firearms, narcotics, and false documents to a FBI informant.[9]

Starting in September 2005, Olinyk recorded a series of conversations he had with Kapeloujnyi and Merabishvili in which they discussed plans to commit robberies.[10] Olinyk recorded eight conversations related to their robbery plans on the dates of September 20, 29, and 30 and October 5 and 18 and November 10 and 17 and finally March 1, 2006.[11] It was at the direction of the case agent, Special Agent Naushaun C. Richards of the FBI, that Olinyk was instructed to shift their attention to robbing the wine store in Brooklyn that was under the control of the FBI.[12]

Mr. Kartveilishvili's joined this robbery conspiracy on November 17, many weeks after Kapeloiujnyi and Merabishvili were recorded by the informant discussing their plans to commit robberies.[13] In the four meetings or recorded conversations leading-up to the meeting of October 18 Mr. Kartvelishvili is not a participant.[14] And as established at the trial, Mr. Kartvelishvili's participation lasts only through this meeting and the two subsequent meetings of November 10 and November 17.[15] He does not attend the meeting of March 1, 2006 where Kapellioujnyi and Merabishvili case the wine store with the informant.[16]

---

[8] Trial Transcript pp. 370-374, passim & pp 375-376, lines 18-25 & line 1.
[9] Trial Transcript pp 42-48, passim. p. 170, lines 23-24 & pp. 361, lines 1-17. .
[10] Trial Transcript p. 377, lines 13-16.
[11] Trial Transcript pp. 376-377, passim.
[12] Trial Transcript pp 375-376, lines 18-25 & line 1.
[13] Trial Transcript pp. 378-382, passim.
[14] Id.
[15] Tral Transcript pp. 380-381, lines 17-25 & lines 1-11.
[16] Trial Transcript pp. 381-381, lines 13-25 & line 1-2.

As established at the trial, at the meeting of October 18, the informant initially describes the crime at the wine store as a burglary, and not as a robbery.[17] As a consequence, Agent Richards instructs Olinyk to arrange another meeting with these individuals in order to describe the entry into the wine store as a robbery.[18] This meeting took place on November 17, 2005.[19] After the meeting of November 17, Mr. Kartvelishvili is never heard from or seen again in connection to this or any other crime alleged in the indictment.[20] However, he is arrested and charged with conspiracy to commit a Hobbs Act robbery of the wine store on March 8, 2006. On the date of his arrest a search of Mr. Kartvelishvili's residence by law enforcement failed to recover any evidence that linked him to this or any other crime.[21]

## MR. KARTVELISHVILI DOES NOT WARRANT A 5-LEVEL ENHACEMENT FOR USE OF A FIREARM AS PER USSG § 2B3.1(b)(2)(C).[22]

There is insufficient evidence in the trial record to support the inference that Mr. Kartvelishvili's scope of the agreement included using a firearm to warrant a 5-level enhancement under **USSG § 2B3.1(B)(2)(C)**, notwithstanding the discussions of Kapelioujnyi and Merabishvili of using a gun at the meeting of March 1, 2006.[23] At best, Mr. Kartvelishvili mentioned tying up the security guard or talking to him -- *"Maybe just to tie him up or just talk to him nicely for him not to interfere"*[24] -- but even here, at this meeting (November 17), the parties never agreed to the method of executing the robbery for this method (i.e., tying-up the security guard) to be within the scope of the robbery conspiracy.

---

[17] Trial Transcript pp. 383-384, passim.
[18] Id at 383.
[19] Id at 383.
[20] Id at 384.
[21] Trial Transcript pp. 389-390, lines 23-25 & 1-21.
[22] PSR ¶ 75 incorrectly cites subsection (E). The correct subsection is (C).
[23] Trial Transcript pp. 127-132 & pp. 138-144 passim.
[24] Trial Transcript p. 140, lines 13-16.

The Second Circuit has held that a conspirator cannot be held liable for an action that was intended by a co-conspirator (*reasonably foreseeable or not*) if the action did not actually occur, *unless it was within the specifically intended scope of the conspiracy*. **US v. Savarese, 404 F.3d 651 (2d Cir. 2005).**[25] In **Savaraese**, the defendant was found guilty after trial of a robbery conspiracy of a federal credit union where his role was that of an "inside man". id. 653. At trial there was no evidence that the co-conspirators actually possessed a firearm or attempted to do so. id 654. However, at sentencing the district court enhanced the defendant's sentence 5-levels under **USSG § 2B3.1(B)(2)(C)** for use of a firearm on the grounds that *"the evidence shows that the coconspirators … could have reasonably foreseen the use"* of a firearm by one of the co-conspirators during the robbery. id 655. On appeal the Second Circuit vacated the sentence and instructed the district court to make factual findings as to whether the evidence supports *"with reasonable certainty"* a finding that the co-conspirators *"specifically"* intended the use of a firearm as part of this conspiracy. id 656.

In the case of Mr. Kartvelishvili, his criminal responsibility in this conspiracy is limited to his intended agreement, and this agreement did not include the use of a firearm. In the trial record there was no testimony that Mr. Kartvelishvili discussed intending to use a gun to commit this robbery or is present when such discussions take place for the use of a firearm to be made part of his intended scope of the agreement. Accordingly, in light of the holding in **Savarese**, Your Honor should not follow the recommendation in the PSR and enhance Mr. Kartvelishvili's sentence 5-levels for use of a firearm.

---

[25] Trial Transcript pp. 160-161. lines 14-25 & 1-9.

**MR. KARTVELISHVILI DOES NOT WARRANT A 2-LEVEL ENHACEMENT FOR RESTRAINING A VICTIM AS PER USSG § 2B3.1(b)(4)(B) NOR A 2-LEVEL ENHANCEMENT FOR THE AMOUNT OF MONEY THEY BELIEVED THEY WERE TO RECEIVE FROM THIS ROBBERY AS PER § 2B3.1(b)(7)(C).**

Other than agreeing to commit a robbery of the wine store at some unspecified future date, there is insufficient evidence in the trial record to establish to a *"reasonable degree of certainty"* that Mr. Kartvelishvili either intended to restrain a victim or knew the amount of money that was to be robbed from the wine store in order for him to be held accountable under the aforementioned guidelines enhancements.[26] Furthermore, considering that the entire plan was hatched by the FBI, this robbery was never going to happen. Accordingly, neither of these Specific Offense Characteristics is applicable to Mr. Kartvelishvili.

**MR. KARTVELISHVILI IS ENTITLED TO A 3-LEVEL ENHACEMENT FOR HIS CONVICTION TO A CONSPIRACY AS PER USSG § 2X1.1(b)(2).**

As indicated in the PSR, Mr. Kartvelishvili is entitled to a three level reduction (-3) to his base offense level under **USSG § 2X1.1(b)(2)** because "…[t]he agents controlled the progress of the robbery conspiracy through …[Olinyk]…, the defendants did not complete all the acts necessary for the robbery, and they were not

---

[26] **Savaraese** id. See,also, **US v. Downing, 297 F.3d 52, 65 (2d Cir. 2002)**(With respect to inchoate crimes it must be established *with a reasonable degree of certainty* that the coconspirators specifically intended to use their special skills to facilitate the substantive offense)(emphasis added).

about to complete the acts necessary for the robbery, but for their arrest".[27] **USSG § 2X1.1(b)(2)** states that in the case of a conviction for a conspiracy the Base Offense level of the substantive offense should be reduced by three levels unless:

> **"… the defendant or a co-conspirator completed all the acts the conspirators believed necessary on their part for the successful completion of the substantive offense or the circumstances demonstrate that the conspirators were about to complete all such acts but for apprehension or interruption by some similar event beyond their control."**

The trial record clearly shows that Mr. Kartvelishvili's participation in this robbery conspiracy ended after his recorded meeting of November 17, 2005, months before co-defendants Kapeloujnyi and Merabishvili are video taped by the FBI casing the wine store in the presence of Olinyk.[28] For this reason, having been convicted only of the conspiracy count, and not having completed all the acts necessary to successfully complete this crime, Mr. Kartvelishvili is entitled to this downward adjustment.

**MR. KARTVELISHVILI REQUESTS A NON-GUIDELINES SENTENCE OF NO MORE THAN 18 MONTHS INCARCERATION AS PER THE SENTENCING FACTORS LISTED IN TITLE 18, UNITED STATES CODE § 3553(a).**

Now that the USSG are no longer mandatory but only advisory as per ***Booker***,[29] and are but one factor to be considered in determining a reasonable sentence, district courts are still directed to determine the applicable guidelines range and consider it along with all the sentencing factors set forth within **18 USC § 3553(a)**.[30] However, a federal sentence under this new sentencing regime must

---

[27] PSR ¶ 78.
[28] Trial Transcript pp. 147-152.
[29] **125 S.Ct. 738 (2005)**.
[30] **US v. Crosby, 397 F,3d 103 (2d Cir. 2005)**.

still be *"sufficient but not greater than necessary to comply with"* the sentencing factors of **18 USC § 3553(a)**. Among the sentencing factors that a court must follow in determining an appropriate sentence are the following:

(1) the nature and circumstances of the offense, and the history and characteristics of the defendant as per **18 USC § 3553 (a)(1)**;

(2) and the need to avoid unwarranted sentencing disparities as per **18 USC § 3553 (a)(6)**.

**Nature and Circumstances of the offense.**

The nature and circumstances of the offense are outlined in the subsection above entitled *Facts of the Case*. As indicated, Mr. Kartvelishvili was arrested after agreeing to a Hobbs Act robbery that was, in fact, a ruse set-up by the FBI through an informant. For this reason, no one was injured, nor was money ever taken. The scope of Mr. Kartvelishvili's agreement was no more than to participate with others to rob a wine store in Brooklyn where they would subdue a security guard.

**History and Characteristics of Mr. Kartvelishvili.**

Attached to this memorandum are character letters written on behalf of Mr. Kartvelishvili by his mother, a teacher of his in Georgia, friends, and his landlord. All of these individuals agree that Mr. Kartvelishvili has many fine qualities namely, that he is a devoted son, loyal friend, and conscientious neighbor. As indicated in the PSR, Mr. Kartvelishvili resides in the United States as an illegal alien.[31] Obviously, he will be deported back to his native country of Georgia upon his completion of his federal sentence in this matter. This will mean being separated from his only child (Demitry

---

[31] PSR ¶ 94.

Kartvelsihvili Kowalcyz, age 2) who resides with his mother in Detroit, Michigan.[32] Mr. Kartvelishvili has nor prior criminal history and no history of any drug addiction.[33] He has a bachelor's degree in economics from his native country of Georgia, information that was corroborated by his mother.[34] While living in the United States since his entry in 1999, Mr. Kartvelishvili has supported himself working as an independent contractor.[35]

**Avoiding Unwarranted Sentencing Disparities.**

As previously alluded to in this memorandum, Mr. Kartvelishvili's co-defendant, Merab Merabishvili, was sentenced to 18 months incarceration for his participation in this conspiracy as well as his participation in other crimes charged in this indictment. Furthermore, as the trial record reveals, Merabishvili's participation in this robbery conspiracy was significantly more extensive than that of Mr. Kartvelishvili's. For instance, it was Merabishvili who, starting in September 2005, met with the informant and the lead defendant (Kapelioujnyi) in order to recruit others to participate in robberies.[36] This occurred weeks before Mr. Kartvelishvili joined the conspiracy. And it was Merabishvili who cased the location of the wine store with Kapelioujnyi and the informant on March 1, 2006, months after Mr. Kartvelishvili had joined the conspiracy.[37] In conclusion, Mr. Kartvelishvili did not participate in this conspiracy to the same extent as Merabishvili. Never the less, under the USSG, Mr. Kartvelishvili stands to receive a more severe sentence than Merabishvili's of 18 months incarceration. Even if the Court were to accept the Defense's guidelines calculation of level 17 in Criminal History I, this will mean that Mr. Kartvelishvili stands to receive a minimum sentence of 24 months incarceration, still six months more than Merabishvili.

---

[32] PSR ¶ 95.
[33] PSR ¶ 100.
[34] PSR ¶ 101.
[35] PSR ¶ 102.
[36] Trial Transcript pp 378-382 passim.
[37] Trial Transcript pp. 147-152.

## CONCLUSION

For these reasons, I respectfully submit that Your Honor should not follow the USSG, and sentence Mr. Kartvelishvili to a non-guidelines sentence of 18 months incarceration.

Thank you.

Respectfully submitted,

*Richard Palma*

Richard Palma

Copies: Clerk of Court (JS) (by ECF)

# SIX CHARACTER LETTERS

RICHARD PALMA
ATTORNEY AT LAW